IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-29284 MER |
| DELBERT JOSEPH MILITARE ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| SATURN SYSTEMS, INC. ) | Adversary No. 09-1132 MER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DELBERT JOSEPH MILITARE, ) | |
| ) | Signed/Docketed |
| Defendant. ) | September 30, 2011 |

**ORDER**

This matter comes before the Court on the Motion for Summary Judgment (the "Motion") filed by Saturn Systems, Inc. ("Saturn") and the response and reply thereto. The Court having heard oral arguments and reviewed the pleadings, hereby makes the following findings of fact and conclusions of law.

**BACKGROUND FACTS**

Saturn is a debt collection agency which also develops and licenses debt collection software.[1] Authorized users can employ the Saturn website to access status reports containing information concerning the number of pre-purchased debt collection accounts which have and have not been used by any particular client, the amount of debt collected on any particular client account, and the cost percentage of the debt recovery.[2] The status reports constitute proprietary information available only on the Saturn website.[3]

On January 13, 2003, Delbert Joseph Militare (the "Debtor") entered into a sales agent agreement with Saturn (the "Agreement"), which prohibited the Debtor from soliciting Saturn's

---

[1] Exhibit A to Motion for Summary Judgment, Order of Judgment, ¶ 3.

[2] *Id.*, ¶ 13.

[3] *Id.*, ¶ 15.

clients for the duration of the Agreement and for the one year its termination.[4] The Debtor was terminated on January 18, 2005. Thirteen days after his termination, the Debtor began working for a direct competitor of Saturn.[5] That same year Saturn commenced a civil action in state court claiming breach of contract and violations of the Uniform Trade Secrets Act ("UTSA").

With respect to the alleged violations of the Agreement, the state court found that subsequent to the Debtor's termination he accessed confidential information by reviewing two status reports. The court concluded the Debtor "knowingly and intentionally attempted to solicit [a client of Saturn]. This constituted a breach [of the Agreement]." The court also awarded Saturn its actual costs and attorneys' fees on the breach of contract claim.

With respect to alleged violations of the UTSA, the state court found the Debtor "at the time of his termination, [ ] knowingly misappropriated numerous trade secrets belonging to Saturn . . . [and] repeatedly accessed the Saturn website to review and update privileged information, without permission of Saturn Systems. By misappropriating these trade secrets the Defendant caused injury to Plaintiff." The state court awarded Saturn its actual costs and attorneys' fees on the UTSA claim.

On January 3, 2008, judgment entered on both claims in the amount of $73,626.07. On December 2, 2008, the Debtor filed a voluntary petition for relief under chapter 7. On March 4, 2009, Saturn initiated an adversary proceeding to have the Colorado judgment determined to be nondischargeable under 11 U.S.C. §§ 523(a)(4)[6] and (a)(6).[7]

With respect to the § 523(a)(4) claim, Saturn alleges "by misappropriating Saturn's trade secrets, [the Defendant] knowingly and wrongfully obtained control over Saturn's property" and the exercise of control was done "with the intent to permanently deprive Saturn of the benefit of [the trade secrets]." As the basis for its § 523(a)(4) claim, Saturn asserted only the UTSA claim contained within the state court judgment.

With respect to the § 523(a)(6) claim, Saturn alleges "by knowingly and intentionally (a) violating the nonsolicitation and nondisclosure provisions of the Agreement and (b) misappropriating Saturn's trade secrets, [the Debtor] willfully and maliciously caused injury to Saturn." Unlike its § 523(a)(4) claim, Saturn asserted both the breach of contract claim and the UTSA claim as the bases for its § 523(a)(6) claim.

---

[4] *Id.*, ¶ 9-10.

[5] *Id.*, ¶ 16.

[6] Regarding its claim under § 523(a)(4), Saturn seeks a determination of nondischargeability only on the basis of larceny.

[7] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

## DISCUSSION

In its Motion, Saturn asserts the underlying state court judgment must be given collateral estoppel effect. For collateral estoppel to apply, three criteria must be met: (1) the issue to be precluded is the same as that involved in the prior state action; (2) the issue was actually litigated by the parties in the prior action; and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.[8]

### A.     The UTSA Claim and § 523(a)(4)

Larceny is the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property."[9] Hence, in order for this Court to give collateral estoppel effect to the state court judgment relating to the UTSA claim, Saturn must show an identical issue was actually litigated,[10] and the court necessarily found a wrongful taking of another's property with intent to convert the personal property or deprive the owner of it."[11]

The state court found the Debtor "misappropriated the trade secrets of Saturn in violation of [COLO. REV. STAT. 7-74-102(2)(b)(I)]." That section defines misappropriation as the "[d]isclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret." Improper means "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."[12] Saturn asserts the state court determined the Debtor committed theft, which is but one of five statutorily provided, non-exhaustive examples of "improper means" for purposes of misappropriation under the UTSA.[13] This Court agrees. While the state court acknowledged it did not have *direct* evidence of theft, it found the Debtor's "repeated access to the Saturn website subsequent to his termination, his possession of Saturn status reports downloaded the same day he appeared at [the client of Saturn] and his knowing denial subsequent to his termination of possession of proprietary documents, prove by a preponderance of the evidence" the Debtor misappropriated the trade secrets of Saturn. "The intent permanently to deprive the owner of the use or benefit of a thing of value may be inferred

---

[8] *In re Wallace*, 840 F.2d 762, 765 (10th Cir. 1988).

[9] *Bryant v. Tilley (In re Tilley)*, 286 B.R. 782, 790 (Bankr. D. Colo. 2002) (quoting *Pool v Johnson*, 2002 WL 598447, *2 (N.D. Tex. 2002). *See also Lykins and Watkins v. Teta (In re Teta)*, 2001 WL 2435948, *9 (Bankr. D. Colo. June 16, 2011) (slip opinion).

[10] The Debtor does not contest the matter was actually litigated.

[11] *Wallace, supra; Tilley, supra.*

[12] COLO. REV. STAT. §  7-74-102(1).

[13] Under the UTSA, "improper means" *includes* theft, bribery, misrepresentation, or breach or inducement of a breach of a duty to maintain secrecy.

from the defendant's conduct and the circumstances of the case, but require proof of a knowing use by the defendant inconsistent with the owner's permanent use and benefit."[14]  Based on the state court's extensive findings regarding the Debtor's actions, it has been shown the Debtor *knowingly* used the Saturn property inconsistently with Saturn's own proprietary use of the property, and thus *intended* to convert Saturn's trade secrets or deprive Saturn of its trade secrets, resulting in collateral estoppel on those issues and a fulfillment of the elements of larceny pursuant to § 523(a)(4).

### B.   The Breach of Contract Claim, the UTSA Claim, and § 523(a)(6)

A claim under § 523(a)(6) will succeed if the debtor intended to cause the injury or believed the injury was substantially certain to occur.[15]  Intending the act is not sufficient for purposes of § 523(a)(6), for if tortfeasors were liable for unintended injuries then:

> [e]very traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description.  A 'knowing breach of contract' could also qualify.  A construction so broad would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'[16]

A knowing breach of contract is not necessarily excluded from "willful and malicious" injury.[17]  For example, in *N.I.S. Corp. v. Hallahan,*[18] the debtor signed a contract containing a covenant not to compete.  The debtor was later terminated.  Thereafter, the debtor began soliciting business from the plaintiff-employer's clients.  The plaintiff-employer initiated a lawsuit in federal district court, eventually obtaining an order enjoining the debtor from selling products to the clients.  The debtor then filed for bankruptcy relief.  The bankruptcy court found

---

[14]  *Huffman v. Westmoreland Coal Co.,* 205 P.3d 501, 509 (Colo. App. 2009).

[15]  *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998); *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004); *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, at *3 (10th Cir. 2000).

[16]  *Id.,* at 62.  *See also In re Tinkler,* 311 B.R. 869, 878 (Bankr. D. Colo 2004) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332 (1934)) ("[A] willful and malicious injury does not follow as of course from every technical act of conversion, without reference to the circumstances.  There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice.") (internal quotation marks omitted).

[17]  *In re Sanders*, 210 F.3d 390, at * 2 (10th Cir. 2000); *Texas v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998), *cert. denied,* 119 S.Ct. 865 (1999); *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1501(7th Cir. 1991).

[18]  *N.I.S. Corp. v. Hallahan (In re Hallahan)*, 936 F.2d 1496, 1501((7th Cir. 1991)

the plaintiff-employer was entitled to a § 523(a)(6) nondischargeable judgment for lost profits and attorneys' fees.

To constitute a *willful* act under § 523(a)(6), "the debtor must 'desire . . . [to cause] the consequences of his act . . . or believe [that] the consequences are substantially certain to result from it.'"[19] The Tenth Circuit uses a *subjective* standard in determining whether a defendant desired to cause injury or believe the injury was substantially certain to occur.[20] The defendant must also have intended to cause the particularized injury sustained by the plaintiff.[21]

Similarly, a *malicious* act under § 523(a)(6) is a "wrongful act, done intentionally, without just cause or excuse."[22] Since the § 523(a)(6) standards for "willful" already include a "wrongful act" that is "done intentionally," the willful prong "is satisfied upon a showing the injury was inflicted *without just cause or excuse*."[23]

### 1. The Breach of Contract Claim

The state court found the Debtor "knowingly and intentionally attempted to solicit [a client of Saturn]." In so finding, the state court provided sufficient language for this Court to conclude the Debtor subjectively intended *the wrongful act* of breaching the contract. There is, however, insufficient information for this Court to conclude the state court necessarily found the Debtor subjectively intended the injuries or subjectively knew injury was substantially certain to occur. In fact, the judgment makes no indication whether the Debtor knew the solicitation was a breach of the agreement. Thus, the breach of agreement appears to be an "innocent and technical" act rather than a "wilful and malicious injury."[24] Further, there is no way for this Court to conclude the state court necessarily found the Debtor breached the contract *without just cause or excuse*.

---

[19] *In re Moore*, 57 F.3d 1125, 1129 (10th Cir. 2004) (quoting Restatement (Second) of Torts, § 8A (1965)).

[20] *Tinkler* at 878-79 (citing *Via Christi Regional Medical Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163 (10th Cir. 2000) (unpublished)); *Mitsubishi Motors Credit of American, Inc. Longley (In re Longley)*, 235 B.R. 651 (10th Cir. BAP 1999).

[21] *Mitsubishi Motors Credit of American, Inc. Longley (In re Longley)*, 235 B.R. 651, 657 (10th Cir. BAP 1999).

[22] *Tinkler at* 869, 880 (quoting *Tinker*, 193 U.S. 473, 486 (1904) (also holding a showing of "actual spite or ill will on the part of a debtor toward the specific person injured by such debtor's act is not required")).

[23] *Id.*, (emphasis in original).

[24] *Texas v. Walker*, 142 F.3d 813, 823-24 (5th Cir. 1998), *cert. denied,* 119 S.Ct. 865 (1999) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331 (1934)).

 *2.      The UTSA Claim*

The state court found the Debtor "*knowingly* misappropriated numerous trade secrets belonging to Saturn" and the Debtor "*knowingly* used improper means" in order to use Saturn's trade secrets for his benefit[25] (emphasis added). In expressly finding the Debtor *knowingly* misappropriated and *knowingly* used improper means to do so, the state court necessarily found the Debtor subjectively intended the wrongful act of misappropriation but also subjectively understood the misappropriation was substantially certain to cause injury to Saturn. Further, since the Debtor knowingly misappropriated trade secrets, and hence knew his actions were in contravention of his obligations under the UTSA, the misappropriation was a willful and malicious injury, rather than an innocent and technical act.[26] Since the Debtor engaged in a wrongful act, without just cause or excuse, and the Debtor subjectively understood the misappropriation was at least substantially certain to cause injury to Saturn, the state court judgment is hereby determined to be nondischargeable pursuant to § 523(a)(6). Accordingly,

IT IS ORDERED the Motion for Summary Judgment is GRANTED and $73,626.07 is excepted from discharge pursuant to § 523(a)(4) and (a)(6).

Dated September 30, 2011

BY THE COURT:

_____
Michael E. Romero
U.S. Bankruptcy Judge

---

[25] Exhibit A to Motion for Summary Judgment, Order of Judgment, p.3.

[26] *Id.*